PITCHER, Judge.
Defendant, Darryl Williams, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. Defendant pled not guilty and, after trial by jury, was found guilty as charged. Subsequently, defendant was sentenced to imprisonment at-hard labor for a term of eighteen years without benefit of probation, parole or suspension of sentence and with credit for time served. Defendant has appealed, urging three assignments of error:
1.
Defendant was denied effective assistance of counsel.
2.
The trial court, without objection, allowed the use of an improper method of in-court identification.
3.
State Exhibit S-l, a canceled check, was erroneously admitted into evidence at trial.
Assignment of error number three was not briefed on appeal and,. therefore, is considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12-4.[1]

FACTS

During the afternoon on March 25, 1989, “after 1:00,” defendant came to the Tastee Freeze, a short order drive-in food service, located in Donaldsonville. At that time, defendant asked Jessie Mae Williams, the cashier, to give him a dollar’s worth of quarters. When he handed her two dollars, she gave him change for two dollars’ worth of quarters. Defendant left and went toward the laundromat located nearby. About two hours later, while Williams was waiting on some customers, she saw defendant sitting on some bleachers near the business. When the customers left, defendant walked up to the window where patrons place and receive food orders as he had done earlier that afternoon and asked Williams for another two dollars’ worth of quarters. Williams retrieved the bank bag containing the money, placed it on the counter and unzipped it. Defendant said: “Give me that damn bag.” Williams replied: “What?” At that time, defendant moved to one side of the window; and Williams then saw that he had a handgun. Defendant pointed the gun at Williams and said: “Give me that damn bag.” Williams took the bank bag and “slinged [sic]) it.” Defendant raised his hand to catch the bag; and a ten dollar roll of quarters came back toward the counter, falling on the floor. Williams turned around and ran in the back near the ice cream machine. She laid down on the floor; and defendant hollered: “Don’t you tell nobody [sic] either.”
Excluding the roll of quarters that fell to the floor, the bank bag (which was taken by defendant) contained thirty dollars and State Exhibit S-l, a check in the amount of $58.41 drawn on the account of the owner of Tastee Freeze payable to Tracy Munson, a Tastee Freeze employee. Williams had cashed the check earlier that day for Munson and had placed the check in the bag. Shortly after the robbery, Connie Lee Mouton was returning to Tastee Freeze to pick up a food order she had placed there earlier that afternoon. At that time, she saw defendant a short distance from Tastee Freeze carrying a green bag and running. Earlier, when she had placed the food order, she observed defendant sitting on a bench. Charles Stevenson, who was working in the vicinity of the Tastee Freeze, also saw defendant running down the street from the Tastee Freeze. According to Stevenson, defendant was running “so fast” that he could not tell if defendant was carrying anything in his hand.
At about 5:00 p.m. on the day of the robbery, Kennedy Joseph was driving to his *335 girlfriend’s home. He stopped, and defendant asked him for a ride to go cash a check. Joseph gave defendant a ride to Rossi’s, a store in Donaldsonville. Joseph did not go into the store with defendant and did not know if defendant cashed the check.
Later that night, Ascension Parish Deputy Sheriff Rodney Coleman received a radio dispatch that defendant had called the Sheriff’s Office and stated that he would wait for the arrival of a deputy at a location on La. Highway 1. In response, Coleman went to the location and placed defendant under arrest.
Will Sonier, the owner of Tastee Freeze, identified S-l as his check made out to Mun-son. When the cheek was returned from the bank with his other canceled cheeks, he determined that it had been cashed at Rossi’s.
At trial, Williams positively identified defendant as the perpetrator. Similarly, Mouton and Stevenson positively identified defendant as the individual they had seen running near the Tastee Freeze.

ASSIGNMENT OF ERROR NUMBER ONE

By means of this assignment, defendant contends that, although his trial counsel was prepared and effective on the first day of the trial, trial counsel “appeared” to be ineffective on the second day of trial. Defendant also contends that “[p]erhaps this was warranted from the fact” of his unsuccessful attempt to dismiss his trial counsel at the beginning of the second day of trial. To support this contention, defendant submits that, in cross-examining Deputy Rodney Coleman, his trial counsel only asked the witness three questions. Defendant asserts that, since Coleman was the arresting officer, trial counsel should have questioned Coleman as to whether or not defendant made any exculpatory statements at the time of his arrest, i.e., “whether defendant was questioning the reason for his arrest or whether defendant knew of the actual crime committed at the time of this arrest.” As additional support for his ineffective assistance of counsel claim, defendant submits that, although Deputy Medrie Lambert testified concerning the check that was stolen from the Tastee Freeze money bag, trial counsel conducted no cross-examination of this witness.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374-75 (La.1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant’s claim that his counsel’s assistance was so defective as to require reversal of a conviction [or death sentence]. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the “inquiry must be whether counsel’s assistance was reasonable considering all the circumstances.” Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. “The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a *336 probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
The record reflects that Deputy Coleman testified on direct examination that defendant had called the Sheriffs office and had stated that he would wait at the location on La. Highway 1 until a deputy would arrive there. On cross-examination, Coleman testified that the police radio dispatcher informed him that defendant had called the police and had stated that he had heard that the police were looking for him for questioning. During cross-examination, trial counsel also elicited testimony that it was Coleman’s understanding that defendant had voluntarily called the police and turned himself in to the police. Defendant took the stand at trial and maintained that he was in Baton Rouge at the time of the instant offense. Defendant denied having previously seen S-l, the check made out to Stacy Munson, and that he had gone to Rossi’s and cashed the check. Concerning his call to the police, defendant gave testimony entirely consistent with the testimony elicited by trial counsel on cross-examination of Coleman. Defendant did not testify that he had made any exculpatory statements at the time of his arrest. On direct examination, Deputy Lambert testified that he had made an effort to determine who had cashed S-l but that he was unable to find out if there was any record of who had cashed the check. Unquestionably, this testimony was innocuous to the defense and apparently accounts for trial counsel’s decision not to conduct any cross-examination of this witness. Under these circumstances, the record fails to show that defendant met either prong of Strickland; and, thus, this assignment claiming ineffective assistance of counsel has no merit.

ASSIGNMENT OF ERROR NO. TWO

By means of this assignment, defendant contends that the trial court erred by allowing, without objection, Jes.sie Mae Williams to make an improper in-eourt identification of him.
Initially, we note that, as conceded by defendant, the defense did not enter a contemporaneous objection to Williams’ in-court identification of defendant. Nor does the record reflect that the defense filed a motion to suppress the in-court identification. Under these circumstances, defendant waived any objection to the in-court identification; and the alleged error is not preserved for appellate review. See LSA-C.Cr.P. art. 841. See also State v. Brown, 588 So.2d 1317, 1321 (La.App. 2nd Cir.1991), writ denied, 592 So.2d 1298 (La.1992). However, even assuming arguendo that the alleged error was properly preserved for review, we find for the reasons which follow that the alleged error is without merit.
An in-court identification is generally permitted provided the source of the identification is independently based. The court may consider the prior acquaintance of the witness with the accused, the length of time the witness observed the perpetrator, and the circumstances under which the observations were made. State v.'Brown, 588 So.2d at 1321. Furthermore, notwithstanding any assertion or intimation of defendant to the contrary, a pretrial identification is not a prerequisite to an in-court identification. See State v. Evans, 512 So.2d 615, 618 (La.App. 2nd Cir.1987), writ denied, 516 So.2d 367 (La.1988). The lack of a pretrial identification is generally a matter which addresses itself to the weight of a witness’s testimony rather than to its admissibility. State v. Jones, 565 So.2d 1023, 1031 (La.App. 1st Cir.1990), writ denied, 585 So.2d 565 (La.1991).
Defendant’s trial was held on November 9 and 10, 1989, slightly more than seven months after the instant offense. The crime occurred in broad daylight, during mid-afternoon. Williams testified that she had known defendant since he was a young boy, for over fourteen years, and that she also knows defendant’s brother, Albert, and recognizes Albert when she sees him. Williams’ testimony revealed that, on the day of the offense, she saw him three times, once when he initially came to the window to get change, a second time when she saw him on the bleachers just before he walked up to the window for the second time, and finally when he came back to the window and committed *337 the offense. She stated that each of the times defendant came up to the window, he was about twelve inches away from her. Williams emphatically and unequivocally identified defendant several times during her testimony; and, notwithstanding any assertion of defendant to the contrary, her testimony was entirely consistent with the positive nature of those identifications. She stated that she saw defendant’s face “good.” She testified that at the time of the offense she did not know defendant’s name, i.e., whether he was Albert or Darryl. She thought that Albert was the taller of the two brothers and that defendant was Albert. However, when Albert was brought to the Tastee Freeze (apparently by the police) for her to identify, she indicated that he was not the perpetrator because he was too short. Accordingly, Williams’ testimony reflects that, although she had been confused about which of the brothers was named Albert, she was certain about the identity of defendant as the perpetrator. Consequently, the identifications were based on rehable testimony with no significant chance of misidentifieation.
Therefore, this assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.

. Defendant briefed two additional arguments not formally assigned as error: (assignment of error number three in brief) that the evidence is insufficient to support the jury's verdict and (assignment of error number four in brief) that his sentence is excessive. However, in accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this Court will not consider any argument such as those referenced above which are neither assigned as error nor related to error patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 n. 1 (La.1977); State v. Overton, 337 So.2d 1201, 1207 (La.1976).